# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 20-CV-1958 (KAM) (RER)

---

TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, *ET AL*,

Plaintiffs,

VERSUS

GOAL ENTERPRISES, INC.,

Defendant.

---

**REPORT & RECOMMENDATION**

July 6, 2022

---

**TO THE HONORABLE KIYO A. MATSUMOTO**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Local Funds"), and Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "International Fund" and, collectively with the Local Funds, "Plaintiffs" or "Trustees") [1] commenced this action against defendant Goal Enterprises, Inc. ("Defendant" or "Goal") pursuant to Sections 502(a)(3) and 515

---

[1] Plaintiffs' memorandum of law in support of their motion for default judgment includes another plaintiff, the International Masonry Institute (ECF No. 28 ("Pl.'s Mem.") at 1), not mentioned in the Complaint (ECF No. 1 ("Compl.")) and not added to this action at any time thereafter. Since "the court can make a legally binding adjudication only between the parties actually joined in the action" Fed. R. Civ. P. 19 Advisory Comm. Notes to 1966 Amendment, the Court cannot bind the International Masonry Institute to this judgment.

of the Employee Retirement Income Security Act ("ERISA"), 9 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, seeking to recover delinquent contributions allegedly owed to these funds and other related relief. (Compl.). Currently before the Court is Plaintiffs' motion for default judgment on their ERISA and LMRA claims (ECF No. 25 ("Pl.'s Mot.")), which Your Honor has referred to me for a report and recommendation (ECF Order dated 04/04/2022).

After carefully reviewing the record, and for the reasons set forth herein, I respectfully recommend that the Motion be granted in part and denied in part. Specifically, I recommend that the Court (1) grant default judgment on Plaintiffs' ERISA and LMRA claims; (2) award Plaintiffs damages of $203,081.21 in delinquent contributions, $37,074.97 in liquidated damages, and $1,509.94 in audit costs for the Local Fund deficiencies described in the Audit Report; (3) deny Plaintiffs' request for interest owed on delinquent contributions to the Local Fund as described in the Audit Report, but grant Plaintiffs an opportunity to submit supplemental briefing on the amount of interest owed; (4) award Plaintiffs post-judgment interest on those damages at the statutory rate set forth in 28 U.S.C. § 1961; (5) award Plaintiffs $7,818 in attorneys' fees and $473.89 in costs; and (6) deny all other requested damages at this time.

## BACKGROUND

I. <u>Factual Allegations</u>

The Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union") is a labor organization as defined in Section 2 of the LMRA. (Compl. ¶ 7). Plaintiffs are multi-employer employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA and fiduciaries within the meaning of Section 3(21) of ERISA. (*Id*. ¶¶ 4–5). They are also trustees of

multiemployer labor-management trust funds operated and organized in accordance with collective bargaining agreements and Section 302(c)(5) of the LMRA. (*Id.*).

Goal is a corporation organized under New York law with its principal place of business in Farmingdale, New York, that employs Union members. (*Id.* ¶ 6). At all times relevant to this action, Goal was engaged in business as an employer within the meaning of Section 3(5) of ERISA and an employer in an industry affecting commerce under the LMRA. (*Id.*).

At all times relevant to this action, Goal and the Union were parties to a collective bargaining agreement ("CBA"). (*Id.* ¶ 8). Under the CBA, Goal was required to remit certain hourly contributions to Plaintiffs for work performed by all of its employees in the trade and geographic jurisdiction of the union ("Covered Work"). (*Id.* ¶ 9). The CBA specified that if such contributions were not remitted by the fifteenth day of the month following the month in which the Covered Work was performed, that the contribution would be considered delinquent. (*Id.* ¶ 10). The CBA mandates that Goal must submit its records to Plaintiffs or their representative to verify compliance with the CBA and conduct audits. (*Id.* ¶ 12). Under the CBA's collection policy, if Goal was delinquent on payments, Plaintiffs became entitled to payment of: (1) the unpaid contributions; (2) interest on contributions owed to the Local Funds at a rate of ten percent (10%) *per annum*; (3) interest on contributions owed to the International Fund at fifteen percent (15%) *per annum*; (4) liquidated damages in the amount of twenty percent (20%) of the unpaid contributions; (5) audit costs; and (6) attorneys' fees and costs incurred to collect these sums. (*Id.* ¶ 11).

In December 2019, Plaintiffs' representatives completed a payroll audit of Goal's books covering the period from January 1, 2016 through December 31, 2018, that showed delinquent contributions. (*Id.* ¶¶ 13–14). Despite being notified of these delinquent contributions, Goal has not paid them. (*Id.* ¶ 15).

3

In addition, Plaintiffs allege that "Goal has also failed to remit contributions to the Funds for other Covered Work, not identified in the audit, performed by Goal's employees during the periods of February 2016 through June 2016 and of September 2017 through December 2019 in the principal amount of $175,616.32 (the 'Reported Delinquency')." (*Id*. ¶ 16). Plaintiffs have notified Goal of this additional delinquency, but Goal has not paid any of it. (*Id*. ¶ 17).

Further, Goal has not submitted reports of the Covered Work performed by its employees for January 2020, despite such work having occurred, creating an additional "Unreported Delinquency" that Goal owes to Plaintiffs. (*Id*. ¶ 18).

## II. Procedural History

Plaintiffs commenced this action on April 29, 2020, seeking to recover delinquent contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs. (Compl. at 7). Defendant was properly served (ECF No. 6) and answered the complaint (ECF No. 9), but thereafter refused to participate in discovery, leading the Court to eventually sanction Defendant by striking its answer and entering default. *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Goal Enterprises, Inc.*, No. 20-CV-1958 (KAM) (RER), 2021 WL 7908031 (E.D.N.Y. Apr. 25, 2021); (ECF Order Dated 05/14/2021 adopting report and recommendation at ECF No. 17). The Clerk of Court entered Defendant's default on June 14, 2021. (ECF No. 20). Plaintiffs then moved for default judgment (ECF Nos. 21–24), but their motion was denied for failing to comply with the Local Rules (ECF Order Dated 10/29/2021). Plaintiffs filed the instant motion for default judgment on November 5, 2021 (Pl.'s Mot.), and it was then referred to me (ECF Order Dated 04/04/2022). Plaintiffs' motion currently before the Court seeks default judgment on their ERISA and LMRA claims and damages including: "$602,190.96, representing delinquent contributions of

$412,395.64, interest thereon of $99,316.78, liquidated damages of $76,848.65, audit costs of $1,760, and attorneys' fees and costs of $11,869.89[.]" (Pl.'s Mem. at 9).

## **DISCUSSION**

I.   Default Judgment Standard

Federal Rule of Civil Procedure 55, which governs here, specifies a two-step process for entering judgment against a party who fails to defend: "first, the entry of a default, and second, the entry of a default judgment." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, a district judge also possesses the inherent power to enter a default[.]" *Id.* at 128 (citations omitted). In the second step, after default has been entered, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

For purposes of default judgment, the court must accept a plaintiff's well-pleaded factual allegations as true, as the defendant's default "is deemed to constitute a concession of all well pleaded allegations of liability[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Legal conclusions, however, need not be accepted; instead, it is the court's "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG) (RER), 2017 WL 3491964, at *1, (E.D.N.Y. July 19, 2017) (quoting *Rolls-Royce plc v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010)) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The same is true for allegations as to damages, which need not be accepted; instead, a plaintiff must show with evidence that the compensation sought "naturally flow[s] from the

injuries pleaded" and reflects the damages demanded in their pleadings. *Greyhound Exhibitgroup*, 973 F.2d at 158–159; Fed. R. Civ. P. 54(c).

## II.  ERISA and LMRA Liability

I have carefully reviewed the Complaint and Plaintiffs' submissions in support of their motion for a default judgment. (Compl.; ECF Nos. 26–28). Those submissions establish Goal's liability under section 515 of ERISA and section 301 of the LMRA.

Section 515 of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 301 of the LMRA confers federal jurisdiction for suits involving the "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).

Plaintiffs allege that Defendant was obligated to make ERISA contributions under the CBA, and that it failed to make such contributions. (Compl. ¶¶ 8–9, 13–18). Plaintiffs have shown, and Goal has admitted by its default, that the Union is a labor organization as defined in Section 2 of the LMRA (*id*. ¶ 7); that Plaintiffs are multi-employer employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA and fiduciaries within the meaning of Section 3(21) of ERISA (*id*. ¶¶ 4–5) and trustees of multiemployer labor-management trust funds operated and organized in accordance with collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA (*id*.); and that Goal was engaged in business as an employer within the meaning of Section 3(5) of ERISA and was an employer in an industry affecting commerce under the LMRA (*id*. ¶ 6).

Further, although Plaintiffs did not produce a signed agreement,[2] Plaintiffs have shown that Goal is bound to the CBA by its "submission to an audit in accordance with the terms of that collective bargaining agreement, reporting hours of work covered by that collective bargaining agreement to Plaintiffs, and remitting contributions to Plaintiffs in accordance with that collective bargaining agreement." (ECF No. 27 ("Harras Dec.") ¶ 11). *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-CV-1809 (RPK) (SJB), 2020 WL 7034025, at *6 (E.D.N.Y. Sept. 23, 2020) (citing *Brown v. C. Volante Corp.*, 194 F.3d 351, 355–56 (2d Cir. 1999) and other cases to show that a party can be bound to a collective bargaining agreement through conduct that manifests an intent to adopt the agreement, including the remittance of union dues, submitting to an audit by the union, the payment of union wages, and other conduct), *report and recommendation adopted,* 2020 WL 7021646 (Nov. 30, 2020); *see also Gesualdi v. Baywood Concrete Corp.*, No. 11-CV-4080 (DRH) (AKT), 2014 WL 4659265, at *4 (E.D.N.Y. Sept. 17, 2014) (finding that a defendant employer manifested intent to be bound by a collective bargaining agreement through its conduct, including signing an earlier agreement, contributing to the plaintiff funds, and submitting to an audit by the plaintiff funds); *Ferrara v. PJF Trucking LLC*, No. 13-CV-7191 (JS) (AKT), 2014 WL 4725494, at *9 (E.D.N.Y. Sept. 22, 2014) (finding that a defendant "demonstrated the intent to be bound by the [] CBA in two ways, namely, by (1) failing to notify the Trustees of its desire not to renew its contract following the expiration of the [previously signed] CBA, and (2) continuing to submit remittance reports pursuant to the terms of the new [] CBA."); *Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr. Servs.*

---

[2] Plaintiffs' counsel, John M. Harras, indicates that the signed CBA "could not be located" (Harras Dec. ¶ 12), but that Goal "signed a written agreement memorializing its assent to the terms and conditions of the collective bargaining agreement between the Union and the Association in the 1980s" (*id.*), and that that agreement remains in effect because the CBA "continue[s] from year to year [] until termination by either party" and neither Goal, the Union, nor Plaintiffs have modified, terminated, or abrogated the CBA (*id.* ¶ 14 quoting the CBA (alterations original)).

*Corp.*, No. 12-CV-3940 (DLI) (RML), 2015 WL 1443038, at *7–8 (E.D.N.Y. Mar. 27, 2015) (collecting cases). Plaintiffs have also shown that Goal failed to make all of the contributions required by the CBA (Compl.¶¶ 14–18; Harras Dec ¶ 26; ECF No. 26 ("Sarosy[3] Dec.") ¶ 8; ECF No. 26-1 ("Audit Report")), thus violating 29 U.S.C. § 1145 and 29 U.S.C. § 185(a). *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers , Loc. 15, 15A, 15C & 15D, AFL-CIO v. Genrus Corp.*, No. 20-CV-4980 (MKB) (RER), 2021 WL 4755704, at *2–3 (E.D.N.Y. Aug. 16, 2021), *report and recommendation adopted,* 2021 WL 3928952 (Sept. 2, 2021); *Finkel v. Detore Elec. Const. Co*., No. 11-CV-0814 (ENV) (RER), 2012 WL 1077796, at *3 (E.D.N.Y. Mar. 6, 2012), *report and recommendation adopted,* 2012 WL 1078470 (Mar. 30, 2012). Therefore, I respectfully recommend that the Court grant default judgment on Plaintiffs' ERISA and LMRA claims.

## III.  Damages

Plaintiffs request damages totaling $602,190.96, including $353,239.04 based on an audit of Goal's records (the "Audit Damages") and additional delinquent contributions of $175,616.32 (the "Reported Delinquency" damages).[4] (Pl.'s Mem. at 3).

"Courts award prevailing ERISA and LMRA plaintiffs: (1) the unpaid contributions, (2) interest, (3) an amount equal to the greater of interest or liquidated damages, (4) reasonable legal costs and attorney's fees, and (5) 'any legal or equitable relief as the court deems appropriate,' including auditor's fees." *Genrus Corp*., 2021 WL 3928952 at *3 (quoting § 1132(g)(2); *Mason*

---

[3] Michael R. Sarosy is an auditor for the Local Funds and conducts audits of funds owed to the Local Funds and the International Fund. (Sarosy Dec. ¶¶ 1–5).

[4] Plaintiffs do not seek damages based on the Unreported Delinquency in their motion for default judgment. (Pl.'s Mem.)

*Tenders Dist. Council v. Aurash Const. Corp.*, No. 04 Civ. 2427 (RCC), 2006 WL 647884, at *1–4 (S.D.N.Y. Mar. 15, 2006)).

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "The Court must ascertain the damages to be awarded with 'reasonable certainty,' and the burden rests upon the Plaintiff to demonstrate its entitlement to recovery." *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds & the Highway, Rd. & St. Constr. Laborers Loc. Union 1010 v. D. Gangi Contracting Corp.*, No. 16-CV-02938 (ARR) (RER), 2017 WL 3447758, at *3 (E.D.N.Y. May 12, 2017) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), *report and recommendation adopted,* 2017 WL 3432363 (Aug. 9, 2017). The Court may, but need not, hold a hearing to determine damages upon default judgment. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993); Fed. R. Civ. P. 55(b)(2). However, in the absence of a hearing, the court must ensure that there is "a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). The Court "may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum" *Fustok*, 873 F.2d at 40, but "cannot simply rely on the plaintiff's statement of damages." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 206 (2d Cir. Jan.4, 2010) (summary order) (citing *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 111). "Proof of damages must therefore be based on admissible, authenticated evidence." *Trs. of Loc. 522 Pension Fund v. Tri-Boro & Rest. Supply Co.*, No. 12-CV-0163 (KAM) (LB), 2013 WL 685377, at *3 (E.D.N.Y. Feb.

24, 2013) (quoting *Bd. of Trs. of the United Union of Roofers v. Dana Restoration, Inc.*, No. 09–CV–1076 (RRM) (ALC), 2010 WL 3925115, at *2 (E.D.N.Y. Sept. 14, 2010)).

Plaintiffs request that the Court award damages based on their pleadings, without holding an inquest hearing. (Pl.'s Mem. at 5). Plaintiffs have submitted the following documents in support of the Audit Damages: (1) the declaration of Michael Sarosy ("Mr. Sarosy"), who conducted an audit of Goal's books and records for the period of January 1, 2016 through December 31, 2018; (2) the Audit Report explaining the results of that audit; (3) a "Payroll vs. Remittance Report," showing the number of hours of Covered Work reported on Goal's payroll during the audit period; (4) the rate schedules for Local 52 and Local 88, which are both part of the Union; and (5) spreadsheets purporting to show how interest was tabulated for the audit period. (ECF No. 26). In support of the damages based on the Reported Delinquency, Plaintiffs have offered: (1) the declaration of Plaintiffs' counsel, John M. Harras, Esq. ("Mr. Harras"); (2) the CBA; (3) the Local Funds' and International Fund's collection policies; (4) a "true and correct copy of a Defendant's reports to the Fund Administrator during the period of the Reported Delinquency . . . attached hereto as Exhibit F" which is likely mislabeled as no exhibit in the record is labeled "Exhibit F"; and (5) a "spreadsheet of the Defendant's reports to the Fund Administrator during the period of the Reported Delinquency with the total amount owed under the reports, the total amount paid during the time period, and the total Reported Delinquency . . . attached hereto as Exhibit G" which also appears to be mislabeled as there is no document labeled "Exhibit G" in the record[5]. (Harras Dec.; *see generally* ECF No. 27).

---

[5] There are documents submitted in connection with the Harras Dec. that might correspond with these exhibits, including a spreadsheet labeled "Exhibit D" that appears to list employer contributions and another spreadsheet labeled "Exhibit E" that shows information including "amounts paid" and "amounts owed," but it is unclear exactly what these documents represent.

A.  <u>The Audit Damages</u>

According to the Audit Report, Goal owes a total of $353,239.04, including $236,779.32 in delinquent contributions; $73,974.33 in interest; $41,725.39 in liquidated damages; and $1,760 in audit costs. (Audit Report at 2). These damages cover all that is owed to the Local Funds (the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and the Tile Layers Local Union 52 Pension Fund), as well as to the Bricklayers & Trowel Trades International Pension Fund and the International Masonry Institute. (Sarosy Dec. ¶¶ 2, 4). According to Mr. Sarosy, the Local Funds "conduct a joint collection and audit program" with both international funds, and "[a]ccordingly, when I conduct an audit of a contributing employer, I include in the audit contributions that are owed to the International Funds." (Sarosy Dec. ¶¶ 4–5). However, as noted above, the International Masonry Institute is not a party to this action. As such, the Court cannot accept the Audit Report's calculations in full, and must look separately to the Audit Damages for the Local Funds and the single International Fund that is a party to this action.

"'[T]he opinion of an auditor is a sufficient basis for an award of a specific amount of damages,' as long as the opinion is 'adequately explained and credited by the Court.'" *Trs. of Laborers Union Loc. No. 1298 of Nassau & Suffolk Ctys. Benefit Funds v. Sitework Mgmt., Inc.*, No. 14-CV-3052 (ADS) (AKT), 2016 WL 11481189, at *6 (E.D.N.Y. July 22, 2016) (quoting *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, 2007 WL 3124612, at *10 (E.D.N.Y. 2007)), *adopted as modified by* 206 F. Supp. 3d 790 (E.D.N.Y. 2016); *see also Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126 (ENV), 2020 WL 9814088, at *5 (E.D.N.Y. Feb. 12, 2020).

I have reviewed Mr. Sarosy's opinion and the underlying audit report, and I find that the damages for the Local Funds have been adequately explained and credited. As such, I respectfully

recommend that the Court grant in part Plaintiffs the requested Audit Damages for the Local Funds,[6] in the amount of $203,081.21 in delinquent contributions,[7] $37,074.97 in liquidated damages,[8] and $1,509.94 in audit costs.[9]

However, with respect to Plaintiffs' request for interest due on the delinquent contributions,[10] I respectfully recommend that the Court deny Plaintiffs' request. According to Mr. Sarosy, "[i]nterest on delinquent benefit contributions is calculated at a rate of ten percent (10%) *per annum* for delinquent contributions due to the Local Funds[.]" (Sarosy Dec. ¶ 27). He explains that this "per annum" assessment results in compounding interest, notes that he "appl[ies] this formula to Goal's delinquent contributions in the Audit" to tabulate the total amount of interest due (*Id*. ¶¶ 28-29), and provides the Court with spreadsheets that purportedly show the tabulation of interest over the audit period (ECF No. 26-5). However, these interest tabulations do not provide the Court with a sufficient basis to verify the dates on which the interest began to accrue, which the collection policy indicates would be the fifteenth day following the end of the month on which the employee worked (ECF 27-4, Collection Policy Art. II, § 1), and do not adequately explain the

---

[6] These damages include: $109,524.52 in delinquent contributions, $19,979.23 in liquidated damages, and $1,045.11 in audit costs for Local Union 52 NNJ/NY (Audit Report at 3); $48,268.08 in delinquent contributions, $8,828.13 in liquidated damages, and $464.83 in audit costs for Local 88 NY (*Id*. at 12); $25,199.94 in delinquent contributions, and $4,597.23 in liquidated damages for the Local Union 52 NNJ/NY – Shop (*Id*. at 18); $649.32 in delinquent contributions, and $118.86 in liquidated damages for the Local 88 NY – Shop (*Id*. at 26); $9,612.96 in delinquent contributions, and $1,753.50 in liquidated damages for Local Union 52 NNJ/NY – Contested (*Id*. at 29); and $9,826.39 in delinquent contributions, and $1,798.02 in liquidated damages for Local 88 NY – Contested (*Id*. at 33).

[7] $109,524.52 + $48,268.08 + $25,199.94 + $649.32 + $9,612.96 + $9,826.39 = $203,081.21.

[8] $19,979.23 + $8,828.13 + $4,597.23 + $118.86 + $1,753.50 + $1,798.02 = $37,074.97.

[9] $1,045.11 + $464.83 = $1,509.94.

[10] Plaintiffs calculated interest on delinquent contributions through December 2019 in the amount of $30,327.04 in interest for Local Union 52 NNJ/NY (Audit Report at 3); $15,729.87 in interest for Local 88 NY (*Id*. at 12); $7,066.67 in interest for the Local Union 52 NNJ/NY – Shop (*Id*. at 18); $142.90 in interest for the Local 88 NY – Shop (*Id*. at 26); $2,309.52 in interest for Local Union 52 NNJ/NY – Contested (*Id*. at 29); and $2,360.80 in interest for Local 88 NY – Contested (*Id*. at 33), for a total of $57,936.80 in interest owed.

amounts to which the interest rate is applied. Instead, the spreadsheets simply provide the total "amount due," "balance due," and "interest due" for each year, and provide for interest owed up to December 2019 rather than through the date of the motion for default judgment. It may be the case the Court can cross reference the documents that were used to conduct the audit to determine the unremitted amounts attributable to each employee in each month, ascertain the corresponding due date upon which those unremitted sums became delinquent, and calculate interest to the present. However, that is not the Court's role; rather, it is the Plaintiffs' responsibility to establish the propriety of the amount sought in the first instance. Since neither Mr. Sarosy's declaration nor the attached spreadsheets adequately demonstrate how interest was calculated such that the Court can ascertain the amount owed to a reasonable certainty, I respectfully recommend that the Court deny Plaintiffs' request for interest at this time. However, I respectfully recommend that Your Honor provide Plaintiffs with an opportunity to supplement their submission to more thoroughly explain the amount of interest due, and to provide calculations to the Court that explain the amount of interest owed through the date of that submission, along with a per diem rate going forward, rather than the amount of interest owed through December 2019.

As for the audit damages related to the International Fund, the report is similarly unclear. Mr. Sarosy makes plain that he analyzed the damages for the two international funds together, and neither his declaration nor the underlying audit report specify which of the two international funds specific contributions are for; instead, the opinion refers to both international funds jointly, and the audit report lists only the "International Rates" including line items like "Int'l Pension" and "Int'l Dues," without specifying whether these amounts refer to money owed to the Bricklayers & Trowel Trades International Pension Fund or the International Masonry Institute. (Sarosy Dec; Audit Report). As such, Plaintiffs' evidence to prove the International Fund audit damages is not

clear enough for those damages to be granted, and there is no way for the Court to independently verify them. Therefore, I respectfully recommend that the Court deny the requested audit damages for the International Fund at this time. *See Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Loc. 14-14B v. Angel Const. Grp., LLC*, No. 08-CV-4760 (SJ) (JO), 2009 WL 6047130, at *8 (E.D.N.Y. Sept. 8, 2009) (declining to grant damages based on an unclear audit report because "[w]hile there is no reason to doubt that the plaintiffs have accurately reported the audit's conclusions, the court has no way of assessing whether those conclusions are warranted.") *report and recommendation adopted,* 2010 WL 932337 (E.D.N.Y. Mar. 11, 2010); *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO by Christian v. BKS-NY, LLC*, No. 18-CV-0256 (LDH) (VMS), 2018 WL 4522103, at *8 (E.D.N.Y. Aug. 6, 2018) (declining to grant some requested damages due to portions of the audit report being unclear or insufficient).

### B.  The Reported Delinquency Damages

Mr. Harras contends that "[b]ased on Defendant's reports submitted to the Fund Administrator for the periods of February 2016 through June 2016 and of September 2017 through December 2019, Defendant is delinquent in contributions to the Funds in the principal amount of $175,616.32 (the 'Reported Delinquency')."[11] (Harras Dec. ¶ 26). However, Plaintiffs do not explain how they arrived at this figure; do not explain why these sums were not included in the audit; and the documents purporting to explain and evidence this Reported Delinquency, described as Exhibit F and Exhibit G, do not appear in the record. (*Id.* ¶¶ 27–28). This evidence is insufficient to establish the Reported Delinquency damages.

---

[11] Plaintiffs also request interest and liquidated damages on the Reported Delinquency. (Harras Dec. ¶¶ 30–33).

First, Plaintiffs have failed to articulate the method by which the unpaid contributions were calculated or estimated, and since the documentation Mr. Harras referenced to substantiate the amount of delinquent contributions does not appear in the record, there is no way for the Court to verify Plaintiffs' calculations. Further, while Mr. Harras says he is "familiar with the facts and circumstances of the case" (Harras Dec. ¶ 2), he does not explain whether or how he personally reviewed the relevant records regarding the Reported Delinquency, nor does he allege that he is the custodian of any such records. There is no evidence in the record that Mr. Harras's "conclusory statements [regarding plaintiffs' damages] are based on [his] first-hand knowledge or such other source such that the contents of such statements would be admissible in evidence." *Tri-Boro & Rest. Supply Co*., 2013 WL 685377, at *4 (alterations original) (quoting *Laborers' Local Union No. 91 Welfare Fund v. Danco Constr., Inc.*, No. 94–CV–318, 1996 WL 189510, at *1 (W.D.N.Y. Apr. 17, 1996)). "Thus, the plaintiffs' attorney makes assertions about what amounts are owed, but provides no support whatsoever for those statements." *Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc*., No. 05-CV-4778 (SJ) (VVP), 2007 WL 3046359, at *4 (E.D.N.Y. Oct. 16, 2007). Therefore, I respectfully recommend that the Court decline to award the Reported Delinquency damages at this time, as "[s]uch unsupported and conclusory assertions are inadequate to establish damages." *Tri-Boro & Rest. Supply Co*., 2013 WL 685377, at *4; *see also Trs. of Loc. 7 Tile Indus. Welfare Fund v. Star Const. Marble & Granite, Inc.*, No. 10-CV-1882 (RRM) (ALC), 2011 WL 4458977, at *2 (E.D.N.Y. Sept. 6, 2011) ("Plaintiffs cannot prove damages based only on an attorney's declaration, especially in this instance, where the attorney's declaration is intended to justify a significant increase in the amount of damages demanded."), *report and recommendation adopted,* WL 4440307 (Sept. 23, 2011); *LaBarbera v. Rockwala Inc.*, No. 06-CV-6641 (CPS) (VVP), 2007 WL 3353869, at *6 (E.D.N.Y. Nov. 8, 2007) ("The absence

of an affidavit by a person with actual knowledge of the facts, supported by appropriate documentation, deprives the court of the ability to make an independent assessment of the damages to be awarded.").

### C.  Post-Judgment Interest

Plaintiffs request post-judgment interest on damages at the statutory rate. (Pl.'s Mem. at 12). "The Second Circuit has held that an award of post-judgment interest is 'mandatory' and should be awarded at the statutory rate prescribed by 28 U.S.C. § 1961(a)." *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *3 (E.D.N.Y. Jan. 13, 2020) (collecting cases), *report and recommendation adopted,* 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020). "Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *All Flooring Sols., LLC*, 2020 WL 9814088, at *14 (quoting 28 U.S.C. § 1961(a)). "Interest is to be 'computed daily to the date of payment.'" *Id.* (quoting 28 U.S.C. § 1961(b)). Accordingly, I respectfully recommend that the Court grant Plaintiffs post-judgment interest on the damages awarded at the statutory rate set forth in 28 U.S.C. § 1961.

### D.  Attorneys' Fees

Plaintiffs request attorneys' fees totaling $11,869.89. (ECF No. 27-8 ("Billing Records") at 7). ERISA authorizes the award reasonable attorneys' fees. *See* 29 U.S.C. § 1132(g)(2)(D). "In calculating a 'reasonable' fee award, the court must first establish a reasonable hourly rate, which is 'the rate a paying client would be willing to pay.'" *Labarbera v. Empire State Trucking, Inc.*, No. 07-CV-669 (SJ) (RML), 2008 WL 746490, at *4 (E.D.N.Y. Mar. 19, 2008) (quoting *Arbor*

*Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112 (2d Cir.2007)). In determining the reasonable hourly rate, "the court should consider the prevailing rates of lawyers with comparable skill, experience and reputation in the district in which the action was commenced and litigated." *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. Tiki Indus., Inc.*, No. 19-CV-3295 (SJF) (ARL), 2021 WL 242266, at *6 (E.D.N.Y. Jan. 25, 2021). In ERISA cases in the Eastern District of New York, courts have approved hourly rates of $200–$450 per hour for partners, $200–$300 per hour for senior associates, $100–$200 per hour for junior associates, and $70–$90 per hour for paralegals and legal assistants. *AM Tile Specialty Constr.*, 2020 WL 7034025, at *12 (collecting cases).

Plaintiffs' have submitted billing records requesting rates of $350 per hour for partners, $265 per hour for "law clerks and associates," and $115 per hour for legal assistants. (Pl.'s Mem. at 10; Harras Dec. ¶¶ 36–38).

Plaintiffs request a rate for $350 an hour for Mr. Harras, "a January 2015 *cum laude* graduate of St. John's University School of Law, and a partner at" the firm of Virginia & Ambinder, LLP ("V&A") who "routinely act[s] as lead counsel in the prosecution of ERISA collection actions." (Harras Dec. ¶ 36). Plaintiffs request a rate of $265 per hour for Maura Moosnick, "a May 2021 *cum laude* graduate of Fordham University School of Law and a law clerk at V&A" who previously worked as a legal assistant there. (*Id.* ¶ 37). No background information or specific details are given for the legal assistants, who are identified only by their initials.[12] (Billing Records). Mr. Harras asserts that these rates are "the by-product of direct negotiations with members of the Boards of Trustees of the

---

[12] The Court admonishes Plaintiffs for not providing information about these individuals when it is aware that they are required to provide such information, and the Court has discretion to withhold legal fees for those whose names and credentials are not provided in an application for fees. *See Temperini Mech. Inc.*, 2020 WL 571680, at *5 (finding that "no fees should be awarded for the time billed for [unnamed legal assistants] "MM", "TG", "JP", "EB", and "EC" as there is no way to assess the reasonableness of the hourly rate charged").

Funds[.]" (Harras Dec. ¶ 39). However, as this case is a default judgment in a relatively straightforward ERISA case, and as I am recommending not to grant portions of the requested damages, I respectfully recommend that Mr. Harras's rate be reduced to $300 per hour, that Ms. Moosnick's rate be reduced to $150 per hour due to her relative inexperience, and that the rate for legal assistants be reduced to $90 per hour. *See AM Tile Specialty Constr.*, 2020 WL 7034025, at *13 (first recommending that "[i]n light of the fact that this is a default judgment, and that the Court is recommending that various portions of the damages sought not be awarded . . . that Mr. Harras's partner rate be reduced to $300 per hour" and then recommending a reduction in the rate for legal assistants to $90 as the "requested rate for V&A's legal assistants, $115, is also unreasonably high"); *see also All Flooring Sols., LLC*, 2020 WL 9814088, at *13 (reducing V&A attorneys' and legal assistants' rates similarly); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834 (FB) (SJB), 2022 WL 584536, at *9 (E.D.N.Y. Feb. 3, 2022) (approving a rate of $250 per hour for Mr. Harras and other V&A partners and associates, and $80 per hour for legal assistants), *report and recommendation adopted,* 2022 WL 580959 (Feb. 24, 2022).

As to the reasonable number of hours worked, courts consider the number of hours spent on a lawsuit "unreasonable if they are 'excessive, redundant, or otherwise unnecessary.'" *AM Tile Specialty Constr.*, 2020 WL 7034025, at *12 (quoting *Labarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387 (SJ) (JMA), 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009)). Here, Plaintiffs have submitted time records for 34.5 hours of work, including 31.1 hours for Mr. Harras, 0.8 hours for Ms. Moosnick, and 2.6 hours for various legal assistants. (Billing Records). While the hours reported for Ms. Moosnick and the legal assistants appear to be within the normal ranges for ERISA cases, many of the entries describing time worked by Mr. Harras appear excessive and

redundant, including numerous entries for "attention to file" for the same information on various days and other overlapping entries. (*e.g.*, Billing Records 4–6). Additionally, 31.1 hours of partner work is high for an ERISA case in this district. *See, e.g. AM Tile Specialty Constr.*, 2020 WL 7034025, at *13 (finding that 18.7 hours of attorney time is "is within the range of what this District has approved in ERISA default judgment"); *Genrus Corp.*, 2021 WL 4755704, at *6 (finding 6.5 hours expended reasonable in a similar ERISA default judgment); *Gesualdi v. Interstate Masonry Corp.*, No. 12-CV-0383 (NGG) (VMS), 2014 WL 1311709, at *13 (E.D.N.Y. Mar. 28, 2014) (collecting cases approving between fourteen and twenty-five hours as reasonable for ERISA default judgment cases in this district). As such, I respectfully recommend cutting Mr. Harras's hours by twenty percent, from 31.1 hours to 24.88[13] hours. *See All Flooring Sols., LLC*, 2020 WL 9814088, at *14 (applying a thirty percent reduction in the number of hours billed by Mr. Harras and other attorneys at his firm). While this case, which included a motion for Rule 37 sanctions and having Goal's answer stricken, was somewhat more complicated than a traditional default judgment, it was still a straightforward ERISA case that did not contain any novel or complex issues, and Mr. Harras's work on this case included significant errors—especially the addition of a plaintiff that was not properly joined to the action, and the failure to provide a sufficient basis for damages or properly label exhibits—that warrant a reduction. *See Frank J. Batchelder Transp. LLC*, 2009 WL 240521, at *5  (reducing an attorney's hours by nearly 50% in an ERISA case when the attorney was well versed in ERISA cases, the case presented no novel or complex issues, and "plaintiffs' submissions contain significant errors and the complaint appears largely boilerplate"). In total, I respectfully recommend awarding $7,818 in attorney's fees, in line with the amounts shown below:

---

[13] 31.1 X .8 = 24.88.

|  | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| John Harras, partner | $300 | 24.88 | $7,464.00 |
| Maura Moosnick, law clerk | $150 | 0.8 | $120.00 |
| Legal Assistants | $90 | 2.6 | $234.00 |
|  |  | **Total Attorneys' Fees** | **$7,818.00**[14] |

### E. Costs

Plaintiffs seek costs totaling $473.89. (Billing Records at 7). ERISA authorizes successful plaintiffs to recover reasonable costs from Defendants. 29 U.S.C.A. § 1132(g)(2)(D). Plaintiffs' costs include court filing fees, service fees, and research fees. (Billing Records at 7). These costs are reasonable. *Genrus Corp.*, 2021 WL 4755704, at *7 (approving $489 in similar litigation costs). As such, I respectfully recommend that the Court grant Plaintiffs $473.89 in costs.

### **CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court (1) grant default judgment on Plaintiffs' ERISA and LMRA claims; (2) award Plaintiffs damages of $203,081.21 in delinquent contributions, $37,074.97 in liquidated damages, and $1,509.94 in audit costs for the Local Fund deficiencies described in the Audit Report; (3) deny Plaintiffs' request for interest owed on delinquent contributions to the Local Fund as described in the Audit Report, but grant Plaintiffs an opportunity to submit supplemental briefing on the amount of interest owed; (4) award Plaintiffs post-judgment interest on those damages at the statutory rate set forth in 28 U.S.C. § 1961; (5) award Plaintiffs $7,818 in attorneys' fees and $473.89 in costs; and (6) deny all other requested damages at this time. Plaintiffs' counsel is hereby directed to serve copies of this Report

---

[14] $7,464.00 + $120.00 + $234.00 = $7,818.00.

and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Kiyo A. Matsumoto within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

     _____

     RAMON E. REYES, JR.
     United States Magistrate Judge

     Dated: July 6, 2022
     Brooklyn, NY